UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:21-CR-32-HAB |
| | ) | |
| PAYNE RANDLE | ) | |

**OPINION AND ORDER**

If six law enforcement officers testify credibly to a story that doesn't make sense, is the Court bound to accept that testimony? That's the question facing the Court on Defendant's motion to suppress. Because the Court has no basis to call those law enforcement officers liars other than its own misgivings, it concludes that it is so bound. Defendant's motion will be denied.

**I.    Factual and Procedural Background**

There are two primary sources of information for the Court: an affidavit prepared by Det. Daniel Radecki ("Radecki") in support of a search warrant for Defendant's home; and an evidentiary hearing held in January of this year. The evidentiary hearing was held after this Court granted Defendant's request for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). (ECF No. 46). In granting that hearing, the Court found that Defendant had made a "substantial preliminary showing" that Radecki's statement in his affidavit, that he smelled the "overwhelming odor" of marijuana upon exiting his vehicle outside of Defendant's home, was false. (*Id*. at 4) (quoting *United States v. McMurtrey*, 704 F.3d 502, 508 (7th Cir. 2013)).

**A.    *Radecki's Affidavit***

In February 2021, Det. Daniel Radecki ("Radecki") was contacted by a FedEx manager about a suspicious package. The package, which Radecki obtained from the manager, was "heavily taped on all seams" and "contained an old shipping label that was handwritten." (ECF No. 37-1 at

1). The sender was listed as Lisa Thompson with a return address of 3660 Cowley Way, San Diego, CA 92117, and a contact number of 951-463-2246. The recipient was listed as James Thompson with a delivery address of 1901 Hillside Ave., Fort Wayne, IN 46805, and a contact number of 260-243-6821.

"Utilizing open source and closed source investigative tools," Radecki determined that neither phone number was valid. (*Id*. at 2). Radecki searched for the sender address and the search showed "no one named Lisa Thompson listed at the address." (*Id*.). Radecki then looked up "1901 Hillside," and found it to be a rental property. But "a Spillman[1] inquiry showed no one by the name of James Thompson being at the address." (*Id*.). Radecki also determined that the package had been shipped from a drop box. These facts led Radecki to believe the package may have been used to transport narcotics.

Radecki, who "has taken several courses and has previously successfully interdicted parcels containing narcotics," determined that his K9 partner "Brix" should conduct a sniff search of the package. (*Id*.). Brix signified the presence of narcotics in the package.

Taking Brix's nose for it, Radecki and "other members of the Allen County Drug Task Force" went to Hillside Ave. (*see* ECF No. 36-1) to "conduct a knock and talk." (*Id*.). After parking, Radecki exited his police car and "immediately noticed an overwhelming odor of raw/green marijuana that appeared to be coming from the residence." (*Id*.). Radecki was twenty-five to thirty feet from the home when he was struck by the aroma. Radecki found that the scent got stronger as he approached the door of the residence. "Allen County Drug Task Force Detectives who were assisting" with the "knock and talk" also reported that they smelled "a very strong odor." (*Id*.). Finding no one home, the officers left.

---

[1] Spillman is a computer database used by law enforcement.

After obtaining a warrant to open the package, Radecki found two more boxes inside. The first contained around 500 grams of marijuana. The second contained around 391 grams of methamphetamine.

Armed with the contents of the package and the "overwhelming odor" of marijuana, Radecki applied for a search warrant for the Hillside Residence. The warrant was issued by Allen County Superior Court Magistrate Samuel Keirns the same day. (ECF No. 37-1).

**B.**   *Hearing Testimony*

The Court will focus on the hearing testimony related to the marijuana smell, since that was the basis for the *Franks* ruling. Radecki testified that, once he exited his vehicle and started walking toward the Hillside Residence, "you could smell the odor of marijuana coming in the area." (ECF No. 51 at 64). Radecki is familiar with the smell of marijuana and is "one hundred percent" confident that's what he smelled. He added that, "[t]he closer we got to the house, the stronger the odor of marijuana was coming from that house." (*Id*. at 66). The increasing strength of the marijuana odor is how Radecki concluded it was coming from the Hillside Residence rather than other homes in the neighborhood. (*Id*. at 80–81).

Next to testify was Det. Bryan Heine ("Heine"). Heine had ridden along with Radecki to assist in the knock and talk. Heine testified that, once he exited Radecki's vehicle, "you could smell marijuana in the air." (*Id*. at 95). When Heine went to the porch of the Hillside Residence to knock, the smell of marijuana was "very prominent." (*Id*. at 96). Based on the smell from the porch, Heine "was under the impression [the smell] was coming from that residence." (*Id*.).

Lt. Jeffrey Smallwood ("Smallwood") gave similar testimony. He was part of the knock and talk but drove separately. When he exited his vehicle, he smelled the "very strong odor of marijuana" that got stronger as he approached the Hillside Residence. (*Id*. at 118). The same

3

testimony was given by Sgt. Holly Coonrod ("Coonrod") (she smelled marijuana "maybe 15, 20 feet" from the front door of the Hillside Residence) (*id*. at 136), Det. Darren Compton ("Compton") (he smelled "raw marijuana" as he opened the doors of the S.W.A.T. armored vehicle) (*id*. at 143), and ATF Special Agent Sean Skender ("Skender") (he could smell marijuana as he walked up to the house) (*id*. at 149).

Officers continued to surveil the Hillside Residence as they waited for the issuance of the warrant. Those officers saw a vehicle back into the driveway of the home. An unknown male, later identified as Defendant, exited the Hillside Residence and placed a white container, blue container, and red duffle bag into the trunk. The vehicle then drove away. After a traffic stop, Radecki and Brix conducted an open-air sniff of the vehicle. Brix alerted to the presence of narcotics in the trunk. A search of the vehicle found marijuana (about ten ounces), methamphetamine, firearms, and other evidence of drug trafficking inside the containers loaded into the trunk.

The search warrant for the Hillside Residence was then executed. There, officers found additional firearms, 3.5 grams of marijuana in a clear plastic bag, and other evidence of drug trafficking. Skender, Smallwood, Heine, and Radecki all had explanations for why such a small amount of marijuana could produce the overwhelming odors to which they testified. Essentially, all four testified that marijuana has a pungent aroma that hangs around even after the source is gone. (*Id*. at 81, 105–06, 121, 150).

## II.   Legal Discussion

### A.   *No* Franks *Violation Occurred*

When a hearing has been granted, as in this case, *Franks* instructs that if "at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining

content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded . . ..." 438 U.S. at 156. The Court is therefore required to first determine whether Defendant has shown by a preponderance of the evidence that the false information was provided intentionally or recklessly, and if so, whether the affidavit, stripped of the false information, is nevertheless sufficient to establish probable cause. *See United States v. Whitley*, 249 F.3d 614, 620 (7th Cir. 2001).

The Court remains *deeply* skeptical of Radecki's claims that he smelled the "overwhelming aroma" of raw marijuana up to thirty feet from the Hillside Residence. As the Court explained in its last order, evaluating an officer's claim that he smelled raw, rather than burnt, marijuana entails an evaluation of "physical characteristics—like proximity to, and amount of, marijuana." *United States v. Gray*, 548 F. Supp. 3d 807, 813 (S.D. Ind. 2021) (quotations and citations omitted) (collecting cases). Nothing at the hearing put Radecki closer to the marijuana or increased the amount of marijuana found. The Court faces the same facts it had pre-hearing—a claim that conflicts with the physical characteristics the Court must evaluate.

Nor is the Court particularly moved by the officers' attempts to explain away the lack of an apparent source of the marijuana smell. As Defendant correctly notes, all the officers' explanations involved confined spaces or the presence of permeable surfaces. Radecki and Smallwood spoke of the smell getting into clothes and furniture. Heine testified to the smell lingering in his squad car. This testimony establishes the unremarkable proposition that items near marijuana smell like marijuana.

Those aren't the facts here. Radecki was not near clothes or furniture that had been inside the Hillside Residence. He was not in an enclosed space. Instead, he was ten yards away from the home. And the home was sealed; the testimony at the hearing was uncontroverted that all windows

and doors were closed because of the cold temperatures on that day. The officers may not have been surprised that so little marijuana was found in the Hillside Residence, but the Court continues to be.

All that said, six law enforcement officers got on the stand, swore an oath to tell the truth, and testified that they smelled marijuana outside the Hillside Residence. To find that Radecki lied in his search warrant affidavit, then, the Court would have to conclude that all six committed perjury. That's not something the Court is prepared to do. All six testified consistently and credibly. All six have extensive law enforcement experience. While the Court finds their stories hard to believe, it doesn't find them so untethered from reality to hold that the stories themselves are evidence of perjury. With no other concerns about the officers' testimony, the Court is left with little choice but to accept the testimony as true. Defendant has not shown by a preponderance of the evidence that Radecki lied in his search warrant affidavit.

**B.**     *Suppression is not Warranted*

Because the evidence here was seized after a warrant was issued, the Court must give great deference to the judge issuing the warrant. *United States v. Woodfork*, 996 F.3d 374, 383 (7th Cir. 2021). The Court must uphold a finding of probable cause "so long as the issuing judge had a substantial basis to conclude that the search was reasonably likely to uncover evidence of wrongdoing . . .." *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010).

Probable cause is not a high standard. It simply means there is a reasonable likelihood evidence of wrongdoing will be found. Probable cause exists when "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found . . .." *Ornelas v. U.S.*, 517 U.S. 690, 696 (1996). Probable cause requires "only a probability or substantial chance of criminal activity, not an actual showing

of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). Probable cause is a flexible, common-sense, totality-of-the-circumstances standard. *United States v. Schenck*, 3 F.4th 943, 946 (7th Cir. 2021).

Having credited Radecki's claims of olfactory excellence, a finding of probable cause is straightforward. Case law is filled with findings that the smell of narcotics provides probable cause for a search warrant. *See*, *e.g.*, *Johnson v. U.S.*, 333 U.S. 10 (1948); *United States v. McIntire*, 516 F.3d 576, 579 (7th Cir. 2008); *United States v. Conklin*, 154 F. Supp. 3d 732, 738 (S.D. Ill. 2016). The smell outside the Hillside Residence, when coupled with the package containing narcotics being addressed to the Hillside Residence, puts probable cause beyond doubt. The issuing magistrate had enough information to conclude that there was a substantial chance that criminal activity was occurring in the Hillside Residence, leaving no basis for suppression.

### III.   Conclusion

For these reasons, Defendant's Motion to Suppress (ECF No. 35) is DENIED. The parties are jointly ORDERED to notify the Court, on or before July 7, 2023, whether an evidentiary hearing is required on Defendant's motion to suppress evidence related to the traffic stop (ECF No. 38), or whether that motion is ready for briefing.

SO ORDERED on June 28, 2023.

      s/ *Holly A. Brady*
      JUDGE HOLLY A. BRADY
      UNITED STATES DISTRICT COURT