UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

UNITED STATES OF AMERICA

v.

PAYNE T RANDLE

CASE NO. 1:25-CV-248-HAB
CASE NO. 1:21-CR-32-HAB-SLC

**OPINION AND ORDER**

Defendant Payne T. Randle ("Randle") is serving a 240-month prison sentence after a jury found him guilty on four criminal counts last year. After pursuing an unsuccessful appeal, Randle now moves to vacate his sentence under 28 U.S.C. § 2255. (ECF No. 133). The Government has responded to his motion, (ECF No. 136), making the matter ripe for ruling. For the reasons below, the motion will be DENIED.

**BACKGROUND**

I.    **The Investigation**

The investigation into Randle began when a shipping company manager reported a "suspicious package" that he believed might contain drugs to the Allen County Police. (ECF No. 37-1, at 1). The package was addressed to a house in Fort Wayne. (*Id.* at 2). After a narcotics dog sniffed the package and responded in a way that suggested drugs may be inside, multiple detectives from the Allen County Drug Task Force went to the residence to conduct a knock and talk. (*Id.*). One of the detectives, Daniel Radecki ("Radecki"), smelled raw marijuana from twenty-five to thirty feet away from the residence and testified that the smell got stronger as he approached the house. (*Id.* at 2–3). Other officers agreed they could smell it too. (*Id.*). When no one answered the

door, the officers left and obtained a search warrant for the package. (*Id.* at 3). The odor from the house was mentioned in the affidavit seeking the warrant. (*Id.*). The search of the package—which purportedly contained "hair supply"—uncovered two more boxes inside. (Gov. Tr. Exs. 16, 17; ECF Nos. 130, at 25–35; 131, at 20–38). One of them, a hair clipper box, contained about 400 grams of pure methamphetamine. (*Id.*). The other had nearly 500 grams of marijuana. (*Id.*).

Based on this discovery, Radecki directed two officers to watch the house while he sought a warrant to search it. (ECF No. 51, at 34–35). During that time, one officer watched a car driven by Marilyn Armour ("Armour") back into the driveway. (*Id.* at 37–38). Randle then came out of the house and dropped two buckets and a duffel bag into the trunk. (*Id.*). After the car pulled away, officers promptly pulled it over. (*Id.* at 73–76). During the stop, a narcotics dog alerted the officers to the trunk. (*Id.* at 75–76). Officers found the buckets Randle placed in the trunk, which contained about 100 grams of methamphetamine, 300 grams of marijuana, and 20 grams of fentanyl. (*Id.* at 76; ECF No. 37-5). The trunk also contained a handgun, gun magazines, holsters, and ammunition. (*Id.*). While the car search was ongoing, Randle left the house, and an officer promptly arrested him. (ECF No. 51, at 76–77).

Officers then received and executed a warrant on the house. (*Id.* at 41). Four guns were found in Randle's main bedroom, and another was discovered in the living room. (ECF No. 130, at 72–82, 106–11, 139–40). Three of the five weapons were loaded. (*Id.* at 72–82). Beyond the guns, another 3.5 grams of marijuana and 28 grams of methamphetamine were also found in the house. (Gov Tr. Exs. 174, 175; ECF Nos. 130, at 203–04, 231; 131, at 21–22, 38). Randle was subsequently indicted on federal firearm and drug charges and attorney Robert W. Gevers II ("Gevers") was appointed to represent him. (ECF Nos. 10, 12).

## II.    The *Franks* Hearing

Gevers promptly moved to suppress the evidence found in Randle's house and requested a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), arguing that the detectives lied about smelling marijuana outside of Randle's house. (ECF Nos. 37, 38). This Court granted the request and held a hearing, finding Randle had made a "substantial preliminary showing that Radecki's statement in his affidavit, that he smelled the overwhelming odor of marijuana upon exiting his vehicle outside of [Randle's] home, was false." (ECF No. 63, at 1) (internal quotations omitted).

Six officers—all with extensive qualifications—testified at the *Franks* hearing,[1] and all gave similar and consistent testimony. To varying degrees, they all testified to smelling marijuana from as far away as thirty feet from the house and that the smell got stronger as they approached.[2] Gevers cross-examined these officers and called an investigator to testify that the house did not appear to have structural defects that would have made the smell of marijuana more likely to escape its confines. (ECF No. 51, at 5–21). The testimony also alluded to the density of the neighborhood, which could have made it difficult for officers to discern which house the marijuana smell originated from.

The Court expressed deep skepticism of the officers' testimony at the *Franks* hearing when ruling on the motion to suppress. (ECF No. 63, at 4–7). It detailed many problems with the officers' explanations for why they might have been able to smell unburnt marijuana from ten yards outside a sealed residential home. (*Id.* at 4–6). But the Court ultimately accepted the officers' testimony as true and denied the motion to suppress. (*Id.* at 6–7).

---

[1] Those six are Radecki, Det. Bryan Heine, Lt. Jeffrey Smallwood, Sgt. Holly Coonrod, Det. Darren Compton, and ATF Special Agent Sean Skender.

[2] For a more detailed summary, see this Court's ruling denying the motion to suppress, (ECF No. 63, at 3–4).

### III.    The Trial and Subsequent Appeal

Randle then proceeded to trial on the following four criminal counts:

- Count 1: attempt to possess with the intent to distribute marijuana and 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846;

- Count 2: possession with the intent to distribute 50 grams or more of methamphetamine, 40 grams or less of a substance containing fentanyl, and less than 50 grams of marijuana, in violation of 21 U.S.C. § 841;

- Count 3: possession of a firearm during the drug trafficking crime alleged in Count 2, in violation of 18 U.S.C. § 924(c); and

- Count 4: being a felon unlawfully in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

(ECF No. 74). The trial lasted three days, during which the government introduced most of the evidence already described. (ECF Nos. 129, 130, 131). Count 1 was based on the drugs in the package, while the government contended that the other counts could be based on the guns and drugs in either Randle's house or Armour's car. (ECF No. 131, at 117–45). Randle's prior felony conviction was not in dispute.

The government also introduced testimony from Armour. (ECF No. 130, at 122–30). Armour testified to having bought marijuana from Randle in the past but denied knowing that he put drugs or guns in her trunk. (*Id.* at 123–27). The government entered text messages between the two into evidence. They showed that Armour informed Randle when she was pulled over, and Randle replied by telling her to not let the officers search the car. (*Id.* at 49; Gov. Tr. Ex. 76).

In closing arguments, Gevers contested Counts 1, 2, and 3. (ECF No. 131, at 146–60). He claimed there was no evidence tying Randle to the package heading to his address, that he never

4

truly possessed the drugs in Armour's trunk, and that none of the guns were possessed in furtherance of drug trafficking. (*Id.*).

The jury convicted Randle on all counts, (ECF No. 98), and the Court sentenced him to 240 months' imprisonment. (ECF No. 115). Randle appealed his conviction to the Seventh Circuit, arguing that this Court erred in denying his motion to suppress after the *Franks* hearing. *United States v. Randle*, No. 24-1969, 2025 WL 915409, at *1–2 (7th Cir. Mar. 26, 2025). The Seventh Circuit rejected his argument and affirmed his conviction. *Id.* at *3.

## DISCUSSION

### I. Legal Standard

#### A. 28 U.S.C. § 2255

Relief under 28 U.S.C. § 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). To succeed on a motion under § 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence exceeded the maximum authorized by law or is otherwise subject to collateral attack. *Id.* A § 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal." *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992). Thus, a § 2255 motion cannot raise:

(1) issues that were raised on direct appeal, absent a showing of changed circumstances;
(2) nonconstitutional issues that could have been but were not raised on direct appeal; and
(3) constitutional issues that were not raised on direct appeal.

*Id.* A § 2255 movant can overcome procedural default in one of two ways: by showing "cause" for the default and "actual prejudice" from failing to raise errors on direct appeal, or by demonstrating

that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008).

### B.  IAC Standard

Among Randle's arguments is a claim for ineffective assistance of counsel ("IAC") claims, to which the general procedural default rules do not apply. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Such claims may be brought through a § 2255 motion even if not pursued on direct appeal. *Id.*

To prevail on an IAC claim, a defendant must show that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced his defense that it deprived him of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 688–94 (1984). For the performance prong, the defendant "must direct us to the specific acts or omissions which form the basis of his claim." *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). "The court must then determine whether, in light of all the circumstances, the alleged acts or omissions were outside the wide range of professionally competent assistance." *Id.* Claims that an attorney was ineffective necessarily involve inquiries into an attorney's trial strategies. These trial determinations, like so many "other decisions that an attorney must make in the course of representation[, are] a matter of professional judgment." *United States v. Berkowitz*, 927 F.2d 1376, 1382 (7th Cir. 1991). To resist the natural temptation to play "[m]onday morning quarterback," *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990), the Court "must defer to any strategic decision the lawyer made that falls within the wide range of reasonable professional assistance, even if that strategy was ultimately unsuccessful." *Shaw v. Wilson*, 721 F.3d 908, 914 (7th Cir. 2013).

Should the petitioner satisfy the performance prong, he must then fulfill the prejudice prong by demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *United States v. Starnes*, 14 F.3d 1207, 1209–10 (7th Cir. 1994). "In making the determination whether the specified errors resulted in the required prejudice, a court should presume . . . that the judge or jury acted according to law." *Strickland*, 466 U.S. at 694. Even though isolated errors can sometimes be considered ineffective assistance, "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Karr v. Sevier*, 29 F.4th 873, 880 (7th Cir. 2022). And mere *"*[f]ailure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996).

## II.   Analysis

Randle raises four arguments in support of his motion to vacate his sentence. First, he contends the government should have identified which of the guns tied to him was used in a drug crime and the jury should have been instructed to be unanimous as to which gun. (ECF No. 133, at 4). Second, he maintains that the evidence was not sufficient to support two of his convictions: attempting to possess drugs with intent to distribute and possessing a firearm in furtherance of a drug trafficking crime. (*Id.* at 5). Finally, he claims his counsel rendered ineffective assistance because he failed to procure expert testimony at the *Franks* hearing and did not do enough to attack Count 3 at trial. (*Id.* at 7).

### A.  Failure to Identify Which Gun Was Used in Drug Crime

Randle first insists that the Government needed to identify at trial which of his guns was used in connection with a drug crime. He also contends that the Court should have instructed the

jury that it needed to be unanimous as to which gun was used. The Court disagrees with both assertions for several reasons.

First, the claim is procedurally defaulted. This is a nonconstitutional argument that he did not raise on direct appeal. Thus, he can only raise it here if he can show "cause" and "actual prejudice." To show cause, Randle only states that he wanted his lawyer to raise this on appeal, but he refused to do so. (ECF No. 133, at 4). This sounds more like an argument that his counsel was ineffective, which would not be subject to procedural default. *See Franklin v. Gilmore*, 188 F.3d 877, 883 (7th Cir. 1999) ("attorney error that constitutes ineffective assistance of counsel is cause to set aside a procedural default"). But whether Randle's claim is based on procedural default or ineffective assistance, the result is the same. Every court to consider the argument he makes has held that a jury need not be unanimous as to which specific gun was used in a drug crime.[3] Thus, either way, this argument fails because it asserts that the government and the jury needed to do things the law does not require of them. His lawyer was in turn not obligated to raise this futile issue either at trial or on appeal. *Stone*, 86 F.3d at 717.

### B.  Insufficient Evidence Claims

Randle next challenges the sufficiency of the evidence for his convictions on Counts 1 and 3. This is a red herring, as sufficiency challenges are not cognizable under § 2255. *United States v. Cox*, No. 1:18-CR-83-HAB, 2025 WL 1650330, at *2 (N.D. Ind. June 11, 2025); *see also United States v. Edun*, 750 F. Supp. 337, 338 (N.D. Ill. 1990); *United States v. Norton,* 539 F.2d 1194, 1195 (8th Cir.1976). But Randle would fail even if he could raise such a challenge.

---

[3] *See United States v. Renteria*, 720 F.3d 1245, 1255–56 (10th Cir. 2013); *United States v. Perry*, 560 F.3d 246, 257 (4th Cir. 2009); *United States v. Wise*, 515 F.3d 207, 214–15 (3d Cir. 2008); *United States v. Hernandez–Albino*, 177 F.3d 33, 40 (1st Cir. 1999); *United States v. Morin*, 33 F.3d 1351, 1353–54 (11th Cir. 1994); *United States v. Correa–Ventura*, 6 F.3d 1070, 1086 (5th Cir. 1993).

Sufficiency challenges can only succeed "if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003). This standard means a guilty verdict will withstand a sufficiency challenge if "*any* trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979) (emphasis in original).

On Count 1, it would not be difficult for a jury to conclude that Randle attempted to possess the drugs in the package. Even though the package did not list him as the recipient, it was heading to the house he lived in. True, the government intercepted the package and searched it before it could reach Randle's doorstep. But given the totality of the evidence in the case, a reasonable jury could conclude that Randle was not set to receive this package unsolicited.

The conclusion is even more clear cut on Count 3. Officers witnessed a drop-off at Randle's house where he placed buckets full of drugs in the trunk of Armour's car. Officers found guns both in Armour's trunk and in Randle's house. A reasonable juror could conclude any one gun or combination of those guns could have facilitated the drug crime. Even if the jurors concluded that the guns in Armour's trunk did not belong to Randle, they still had four guns found in Randle's house to choose from, all of which were found mere moments after he dropped marijuana and methamphetamine into Armour's trunk.

For these reasons, Randle's sufficiency challenges fail.

### C. Ineffective Assistance of Counsel Claims

Finally, Randle asserts that Gevers rendered ineffective assistance of counsel for two reasons. First, he claims Gevers prejudiced him by failing to procure expert testimony to rebut the officers' testimony at the *Franks* hearing. Randle insists Gevers could have and should have put forward an expert to testify that the marijuana in his house could not have been detectable from

thirty feet outside the premises. Second, Randle argues that Gevers failed to attack Count 3 at trial. The Court disagrees with both of Randle's contentions.

Randle cannot demonstrate that Gevers's decision not to procure an expert was objectively unreasonable. For one thing, Gevers called a witness who attempted to discredit the officers' testimony. That witness—an investigator—testified that Randle's house had no structural defects that would have made the officers more likely to smell such a small amount of unburnt marijuana from inside. He also testified about the density of the neighborhood, potentially inferring that officers could not have pinpointed the origin of the smell to Randle's house. While this testimony did not ultimately persuade the Court or tackle the precise issue Randle wished to have addressed, it was a reasonable attempt by Gevers to cast doubt on the officers' testimony. Gevers also engaged in extensive cross-examination of all six officers. It is not the Court's job to second-guess Gevers' decision, or lack thereof, to call an expert. The only question is one of reasonableness, and Gevers could have reasonably concluded that thorough cross-examination was enough to raise doubts about the officers' testimony at the *Franks* hearing.

Further, for this alleged failure of Gevers to support an ineffective assistance claim, Randle must demonstrate that such expert testimony was "capable of supporting the defense" and "was reasonably available at the time of trial." *Ellison v. Acevedo*, 593 F.3d 625, 634 (7th Cir. 2010). Here, Randle has pointed to no specific expert who would have been able to offer the testimony he desired, let alone identified one who would have been available for his trial. This alone dooms his claim.

While it is probably true that "any number of expert witnesses that could have testified to human smelling ability" or "marijuana potency," (ECF No. 133, at 7), it is not even clear how much such an expert would have helped him. The Court itself expressed significant skepticism

toward the officers' version of events. (ECF No. 63, at 4–6). Even so, the Court found that all six officers had testified credibly and consistently. (*Id.* at 5–6). And though their stories were hard to believe, this Court—and later the Seventh Circuit—believed they were plausible and credited them as true. (*Id.* at 6); *Randle*, 2025 WL 915409, at *2–3. A hypothetical expert providing the testimony Randle wishes he had would not have altered the evidentiary landscape so significantly that this Court would have been likely to rule differently.

Randle's claim that Gevers made no effort to contest Count 3 also falls flat. Gevers spent considerable time in his closing argument persuading the jury that none of the guns tied to him were used "in furtherance" of a drug trafficking crime. (ECF No. 131, at 156–59). He furthered this point by arguing that the guns in Armour's trunk could not be tied to Randle. (*Id.* at 152–55). Seeing as the Court ruled all this evidence was admissible—over Gevers' extensive objections to preserve grounds for appeal—the Court cannot conceive of more that Gevers could have done to attack Count 3 than to argue these exact two points. His efforts were more than reasonable.

In sum, Randle cannot show Gevers rendered deficient performance. So the Court need not reach the issue of prejudice, and his ineffective assistance claim fails.

### III.    Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). For the reasons articulated above, the Court finds that no reasonable jurist could conclude that Defendant is entitled to relief, so no certificate of appealability will be issued.

<u>**CONCLUSION**</u>

For these reasons, Randle's motion to vacate (ECF No. 133) is denied. No certificate of appealability will issue.

**SO ORDERED** on November 12, 2025.

s/ *Holly A. Brady*

CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT